IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL DVORAK, | ) |
| Plaintiff, | ) |
| v. | ) No. 14 C 10045 |
| HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC, et al., | ) Judge Virginia M. Kendall |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Dvorak crashed his Harley-Davidson motorcycle because of an alleged defect in the motorcycle's transmission. After suffering four broken ribs and a fractured disc in his back from the crash, Dvorak instituted this action against Defendants Harley-Davidson Motor Company Group, LLC, C.H.D. Partners, LLC, and Fox Glenview, LLC alleging product liability in the form of negligence and strict liability (Counts I-VI). (Dkt. No. 1-4, Third Am. Compl.) Having answered the third amended complaint and engaging in some discovery, Fox Glenview now moves the Court for summary judgment pursuant to Federal Rule of Civil Procedure 56, contending that it came into the picture well after Dvorak sustained his injuries and that it cannot be liable for his injuries. Specifically, Fox Glenview maintains (1) that its involvement in the matter stems from its purchase of the dealership formerly controlled by C.H.D. Partners, (2) that it purchased only the assets of C.H.D. Partners and did so well after Dvorak was injured, and (3) that it did not assume any of C.H.D. Partners' preexisting liabilities.[1] Because the purchase agreement between Fox Glenview and C.H.D. Partners conclusively demonstrates that Fox

---

[1] C.H.D. Partners is not a defunct entity and in fact has appeared and is represented by counsel in this litigation.

Glenview did not bargain for any of C.H.D. Partners' liabilities emanating from this lawsuit and the record is devoid of any evidence tending to demonstrate that Fox Glenview is merely a continuation of C.H.D. Partners, and for the reasons that follow, the Court grants Fox Glenview's motion for summary judgment (Dkt. No. 43). Fox Glenview is dismissed as a defendant from this action.

## BACKGROUND[2]

At the outset, the Court addresses Fox Glenview's challenges to Dvorak's responses to its Rule 56.1 statement and Dvorak's affidavit affixed to his response brief. First and foremost, Dvorak failed to comply with Northern District of Illinois Local Rule 56.1 when responding to Fox Glenview's factual statements. Local Rule 56.1(b)(3)(B) requires parties to file responses to "each numbered paragraph in the [opposing] party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (quoting N.D. Ill. L.R. 56.1(b)(3)(B)). The purpose of Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts pertinent to the resolution of the case. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (concluding Rule 56.1 statements are incompliant with local rules if they fail to adequately cite to the record). The Court may disregard statements and responses that do not properly draw support from the record, *see Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 809-10 (7th Cir. 2005), and the requirements for responses are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). Here, Dvorak disputes a number of Fox Glenview's statements of

---

[2] The Court takes the following facts from Dvorak's third amended complaint, Fox Glenview's Rule 56.1 statement of material facts, Dvorak's affidavit affixed to his response brief, and the exhibits Fox Glenview attached to its reply brief.

2

fact by generally claiming he has insufficient information to formulate a response. (Pl. 56.1 Resp. ¶¶ 9-10, 15-16, 31-32.) Federal Rule of Civil Procedure 56(d) provides an avenue for a non-moving party to claim he has insufficient knowledge to properly respond but requires the non-moving party to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d). Dvorak did not support his blanket objections with any affidavit or declaration. Accordingly, the Court deems admitted those facts which Dvorak disputes without evidentiary support. *See Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648-49 (7th Cir. 2014) ("it is within the district court's discretion to strictly enforce local rules regarding summary judgment").

The Court will not, however, strike Dvorak's affidavit attempting to set forth additional material facts affixed to his response brief. Although Local Rule 56.1(b)(3)(C) requires a non-moving party to file a separate statement of additional facts (if any) separate from its response memorandum, Federal Rule of Civil Procedure 56(c)(3) permits the Court to "consider other materials in the record" when ruling on a motion for summary judgment. The Court elects to do so here and is particularly disinclined to strike Dvorak's affidavit contained in his response brief because Fox Glenview is equally guilty of attaching evidentiary materials[3] to its reply memorandum. Both Dvorak's and Fox Glenview's support will be considered.

The following facts are undisputed unless expressly noted. Dvorak is a citizen of Illinois, Harley-Davidson is a Wisconsin corporation, C.H.D. Partners is a limited liability company ("LLC") domiciled with all its members in Louisiana, and Fox Glenview is an LLC domiciled with all its members in Michigan. (Def. 56.1 St. ¶¶ 3-6.) Harley-Davidson makes and sells motorcycles. (*Id.* at ¶ 8.) On March 30, 2013, Dvorak purchased a Harley-Davidson Softail

---

[3] Pertinent to the instant dispute, Fox Glenview submitted the corporate filing statements for itself and C.H.D. Partners along with its reply brief.

Heritage Classic FLSTC at a dealership then operated by C.H.D. Partners in Glenview, Illinois. (*Id.* at ¶¶ 9, 12, 33.) Dvorak alleges that on July 27, 2013, as he was attempting to park the motorcycle near the end of his driveway, the clutch failed to disengage, the throttle accelerated, and Dvorak careened through a number of his neighbors' yards until he was able to intentionally drop the motorcycle. (*Id.* at ¶ 13.) A little less than four months later, Harley-Davidson allegedly issued a product recall on clutch assemblies in some of its motorcycles. (*Id.* at ¶ 14.) Dvorak's product liability action stems from this recall and allegedly faulty clutch.

On February 14, 2014, more than six months after Dvorak's accident, Fox Glenview entered into an Asset Purchase Agreement with C.H.D. Partners for the inventory and physical space of the Harley-Davidson dealership in Glenview. (*Id.* at ¶¶ 10, 15; Dkt. No. 45 Ex. 3, Asset Purchase Agreement.) In the Agreement, Fox Glenview purchased a number of assets "free and clear of all Encumbrances, unless expressly assumed" including new and used motorcycles, furniture and equipment, parts and accessories, and intangible assets. (Agreement at 2-3.) The Agreement also contemplated a separate real property contract for the physical dealership itself. (*Id.* at 1.) Fox Glenview assumed a limited amount of liabilities from C.H.D. Partners in the Agreement, including, most importantly, "all of [C.H.D. Partners'] obligations under the Assumed Contracts . . . arising on and after the Closing Date" of February 14, 2014. (*Id.* at 4.) The Agreement explicitly provides that Fox Glenview would "not assume, or in any way be responsible or liable for, any liability, obligation, claim, or expense of [C.H.D. Partners] arising out of the operation of the Dealership on or before the Closing Date[.]" (*Id.*)

According to the Agreement, Fox Glenview paid significant consideration for C.H.D. Partners' assets associated with the dealership. Among other things, Fox Glenview paid for the furniture and equipment, the net invoice prices for new motorcycles, the book value for

accessories and merchandise, and a large sum for C.H.D. Partners' intangible assets.[4] (*Id.* at 5-6.) C.H.D. Partners represented that, aside from a threatened action by Anthony Finochio in 2013, the dealership was not involved in any litigation or controversy. (*Id.* at 15; Def. 56.1 St. ¶¶ 25, 30.) Before entering into the Agreement, Fox Glenview was unaware of Dvorak's accident or any liability potentially stemming from it. (Def. 56.1 St. ¶ 16.)

Dvorak asserts that he has visited the dealership since February 14, 2014 and that the overall business appeared to maintain the same operations with a number of the same personnel employed at the dealership. (Dkt. No. 50-1, Dvorak Aff. ¶ 8.) However, corporate filings attached by Fox Glenview, taken in conjunction with Dvorak's own allegations, paint the picture that Fox Glenview and C.H.D. Partners are entirely unrelated entities. Fox Glenview is a Michigan LLC that is licensed to operate in Illinois while C.H.D. Partners is based out of Louisiana and is no longer able to operate in Illinois as of August 14, 2015. (Dkt. No. 52-1, Ex. 3, LLC File Detail Reports.) As of December 29, 2014, C.H.D. Partners was still an active Louisiana LLC. (C.H.D. Partners LLC Annual Statement.) According to its corporate filings, Fox Glenview's Illinois registered agent is Pete Ricards and its Michigan agent is Monica Sekulich. (*Id.*; Fox Glenview LLC Annual Statement.) C.H.D. Partners' Illinois agent was Bret Irvine while its Louisiana agent is Lance Kinchen. (C.H.D. Partners LLC Annual Statement.) Daniel Devos is a manager for Fox Glenview while C.H.D. Partners' Louisiana filing states that its officers are Greg Cooke and Robert Rubin. (Fox Glenview LLC Annual Statement; C.H.D. Partners LLC Annual Statement.)

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that no genuine dispute exists as to any material fact and the

---

[4] Fox Glenview filed the Agreement, with the exact amounts of consideration paid, under seal.

movant is entitled to judgment as a matter of the law. *See* Fed. R. Civ. P. 56(a). A material fact is a fact that is "identified by the substantive law as affecting the outcome of the suit." *Bunn v. Khoury Enters. Inc.,* 753 F.3d 676, 681 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue in the context of a motion for summary judgment cannot simply be a "metaphysical doubt as to the material facts" but rather exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *see also Flint v. City of Belvidere*, 791 F.3d 764, 769 (7th Cir. 2015). If the movant is able to provide specific evidence or point to an absence of evidence to support the non-moving party's case, the non-moving party cannot rely on conclusory statements but "must set forth specific facts showing that there is a genuine issue for trial." *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014); Fed. R. Civ. P. 56(e). While a court must draw reasonable inferences that favor the non-moving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 656 (7th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255). Summary judgment will be granted if the non-moving party does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013).

## **DISCUSSION**

The parties do not dispute that Fox Glenview entered the equation after Dvorak suffered his injuries or that the Agreement provided for only the purchase of C.H.D. Partners' assets associated with the dealership and not its liabilities. (Dkt. No. 50 at 2.) Nor do the parties dispute that Fox Glenview is a successor to C.H.D. Partners in regards to the dealership. "Illinois

common law states that a successor entity does not assume the liability of its predecessor."[5] *Moriarty v. Svec*, 164 F.3d 323, 327 (7th Cir. 1998) (citation omitted). The general presumption of successor corporate nonliability "developed as a response to the need to protect bonafide purchasers from unassumed liability and was designed to maximize the fluidity of corporate assets[.]" *See Vernon v. Schuster*, 688 N.E.2d 1172, 1175 (Ill. 1997) (internal citations omitted). However, exceptions to successor nonliability exist. *See Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 674 (7th Cir. 2011) (explaining that successor liability is an equitable doctrine designed to preclude fraudulent conveyances). To thwart fraud or fundamental unfairness to creditors after dissolution of an entity, the general rule of successor nonliability maintains four exceptions where liability can attach: "(1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations." *Vernon*, 688 N.E.2d at 1175-76 (citations omitted).

Dvorak concedes that the first, second, and fourth exceptions to successor nonliability do not apply under the circumstances present here. Dvorak instead relies on the third exception, contending that it is possible that Fox Glenview is a mere continuation of C.H.D. Partners and that a genuine issue of material fact precludes summary judgment. The litigation between Dvorak and Fox Glenview therefore boils down to a single issue: whether Fox Glenview can be considered the mere continuation of C.H.D. Partners and therefore potentially liable for Dvorak's prior injuries.[6] Based on the affidavits, corporate filings, and Agreement between Fox Glenview

---

[5] The Court applies Illinois substantive law because jurisdiction is based on diversity and neither party raised a conflict of law issue. *See Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013).

[6] A successor liability complication not present here occurs "when a claim arising from a violation of federal rights is involved, the courts allow the plaintiff to go against the purchaser of the violator's business even if it is a true sale

and C.H.D. Partners, the record conclusively shows, even when viewed in the light most favorable to Dvorak, that the mere continuation exception does not apply.[7]

"The mere continuation exception allows recovery when the purchasing corporation is substantially the same as the selling corporation." *North Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 654 (7th Cir. 1998) (*overruled on other grounds by Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983 (7th Cir. 2010)). The exception applies when the purchasing entity "maintains the same or similar management and ownership, but merely wears different clothes." *See Vernon*, 688 N.E.2d at 1176 (citations and quotation marks omitted). The essential inquiry focuses on "whether there is a continuation of the *corporate entity of the seller-* not whether there is a continuation of the *seller's business operation*[.]" *Id.*; *see also, e.g.*, *North Shore Gas*, 152 F.3d at 654; *Xtra Lease, LLC v. United Transport, Inc.*, No. 10 CV 5993, 2011 WL 1748619, at *3-4 (N.D. Ill. May 5, 2011) (finding continuation where seller entity was owned by husband and wife and purchasing entity was owned solely by wife who subsequently leased much of the entity's equipment to husband). The majority view of the exception "require[s] identity of ownership before imposing successor liability," *see Nilsson v. Continental Mach. Mfg. Co.*, 621 N.E.2d 1032, 1035 (Ill. App. Ct. 1993) (collecting cases), but some courts look to a number of factors when determining whether the selling entity actually maintains control after the asset sale, including: (1) identity of officers and directors between the selling and purchasing entities, (2) continuity of ownership and control, (3) whether the selling entity

---

. . . provided that . . . the successor had notice of the claim before the acquisition . . . [and] there [is] substantial continuity in the operation of the business before and after the sale." *See Feinberg*, 629 F.3d at 674 (quoting *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 747-48 (7th Cir. 1994)). Dvorak raised no federal claims in his third amended complaint.

[7] Dvorak argues that at the very least, more discovery is required and Fox Glenview's motion is premature. The Court disagrees. The Court set a discovery schedule on April 27, 2015 (Dkt. No. 26) and discovery was open for nearly four months before Fox Glenview moved for summary judgment. (Dkt. No. 43.) Rule 56 permits a party to so move before discovery closes. *See* Fed. R. Civ. P. 56(b). Moreover, the Agreement and the entities' corporate filings decisively demonstrate that summary judgment is proper.

dissolves after the asset transfer, and (4) whether the purchasing entity paid adequate consideration for the assets. *See North Shore Gas*, 152 F.3d at 654 (collecting cases). Here, the continuation exception does not apply under either test.

First and foremost, there can be no dispute regarding identity of ownership amongst Fox Glenview and C.H.D. Partners. The record affirmatively establishes that there is not. *See Vernon*, 688 N.E.2d at 1177 ("Based on the obvious lack of common identity of ownership, the continuation exception to the rule of successor corporate nonliability cannot be applied[.]"). Here, both the respective corporate filings of the two entities and Dvorak's own allegations demonstrate that the LLCs are owned and operated by separate parties. While Fox Glenview is a Michigan LLC that is licensed to, and does, operate in Illinois, C.H.D. Partners operates out of Louisiana and has allowed its LLC registration in Illinois to lapse. C.H.D. Partners' exit from Illinois is entirely consistent with its selling of the dealership to Fox Glenview. Additionally, the registered agents and officers of Fox Glenview and C.H.D. Partners are entirely disparate; the record reflects no overlap whatsoever.

Moreover, C.H.D. Partners did not dissolve subsequent to the asset transfer. *See* C.H.D. Partners LLC Annual Statement (evidencing activity and good standing in Louisiana as of December 29, 2014); *see also, e.g.*, *Joseph Huber Brewing Co., Inc. v. Pamado, Inc.*, No. 05 C 2783, 2006 WL 2583719, at *14 (N.D. Ill. Sept. 5, 2006) ("When the selling company continues to exist as a business entity after the sale, court[s] are more likely to conclude that the purchasing company is not merely the continuation of the selling company."); *Gray v. Mundelein Coll.*, 695 N.E.2d 1379, 1389 (Ill. App. Ct. 1998) (no successor liability, in part, because selling entity "did not dissolve"). Not only does the record show that C.H.D. Partners is, or until very recently, was, still active, it is a named defendant that has filed an appearance in this action,

retained counsel, and answered Dvorak's third amended complaint. (Dkt. No. 28.) This is further support for Fox Glenview's assertion that the continuation exception does not apply. *See, e.g.*, *Baxi v. Ennis Knupp Assocs., Inc.*, No. 10 CV 6346, 2011 WL 3898034, at *18 (N.D. Ill. Sept. 2, 2011) (finding it perplexing why plaintiff sought to sue any party other than the originally involved entity because it did not appear to be defunct, was a named defendant with retained counsel, and filed an appearance). Finally, regarding the last factor of the minority test, the Agreement shows, and Dvorak does not dispute, that Fox Glenview paid serious, substantial consideration in exchange for the dealership and the assets that came with it. Looking at the undisputed facts under either the majority or minority lens leads to a conclusion that the continuation exception does not apply and successor liability does not affix to Fox Glenview.

Dvorak's argument that the dealership carried on the same day-to-day operations after the asset transfer does not save his action against Fox Glenview as C.H.D. Partners' successor. *See Feinberg*, 629 F.3d at 674 ("[T]he common law rule looks only to identity of ownership between seller and buyer and not to identity of operations between a seller and a buyer that may have been dealing at arm's length."). "The [continuation] exception is designed to prevent a situation in which the specific purpose of the successor's acquiring assets is to place those assets out of the reach of the predecessor's creditors." *Vernon*, 688 N.E.2d at 1176 (citation omitted). There is no concern of this conduct here. The Court therefore grants Fox Glenview's motion for summary judgment and dismisses it as a defendant.

## **CONCLUSION**

For the reasons stated above, the Court grants Fox Glenview's motion for summary judgment. (Dkt. No. 43.) Fox Glenview is dismissed as a defendant.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 1/7/2016